# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| KAMIL DAON SAVAGE, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 4:22-cv-00202 |
| v. | § | Judge Mazzant |
| | § | |
| DETROIT INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Detroit Independent School District's Motion to Transfer Venue (Dkt. #17). Having reviewed the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED.**

### BACKGROUND

From August 2019 to March 2021, Plaintiff Kamil Daon Savage ("Savage") coached men's basketball at Detroit High School in Detroit, Texas. During his employment, Savage alleges that Defendant Detroit Independent School District ("DISD") subjected him to disparate treatment and a hostile work environment because he is African-American. This discriminatory conduct apparently manifested itself in various ways. On a broader level, Savage claims that DISD employees more intensely scrutinized him compared to his non-African-American colleagues, and the terms of his employment also differed from DISD's non-African-American employees. But Savage apparently experienced disparate treatment on specific occasions as well. For example, DISD prevented Savage from hosting planning periods or "open gym" practices, which was not the case for Savage's non-African-American peers (Dkt. #1 at p. 3). In one instance, Savage was reprimanded for texting his team members past 9:00 p.m., but Savage's other colleagues did not

receive such a reprimand (Dkt. #1 at p. 3). Savage also asserts that he was once falsely accused of making a student feel "uncomfortable" (Dkt. #1 at p. 3). However, he maintains that his behavior was no different than other employees outside of his protected class (Dkt. #1 at p. 3).

Ultimately, in the spring semester of 2021, Savage was informed that his contract would not be renewed with DISD because he was not certified as a teacher. Savage resigned in lieu of being terminated, and his position was filled by a white male who was not certified as a teacher. Thereafter, Savage filed a joint complaint of discrimination with the Texas Workforce Commission Civil Rights Division and the Equal Employment Opportunity Commission. He received his right to sue letter on December 15, 2021.

On March 14, 2022, Savage filed the current case in this Court, alleging claims for racial discrimination and retaliation under Title VII and the Texas Labor Code. He claims that DISD's various actions, including firing him, were undertaken either because of his race or because he reported instances of discriminatory conduct to DISD.

On December 22, 2022, DISD filed the pending motion (Dkt. #17). DISD is seeking an intra-district transfer from the Sherman Division of the Eastern District of Texas to the Texarkana Division of the Eastern District of Texas under 28 U.S.C. § 1404(a). Savage has opposed the motion according to DISD's certificate of conference but did not respond to DISD's motion.

## LEGAL STANDARD

Section 1404 permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29

(1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of § 1404 "is to prevent the waste 'of time, energy, and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . .'" *Van Dusen,* 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive, and no single factor is dispositive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue.

3

*Id.* The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Id.* at 315 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315. And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

## ANALYSIS

DISD argues that this case should be transferred to the Texarkana Division under § 1404. Before turning to the merits of DISD's motion, the Court notes that Savage's failure to respond creates profound consequences. Under Local Rule CV-7(d), a party's failure to provide a response of any kind "creates a presumption that the party does not controvert the facts set out by [the] movant and has no evidence to offer in opposition to the motion." Accordingly, the Court will accept DISD's statements of fact as true in its motion to transfer. *See* Local Rule CV-7(d). As explained below, this ultimately changes the Court's decision.

Here, there is no dispute that this case could have been filed originally in the destination venue. Thus, the threshold inquiry is satisfied, and the Court considers if transfer is appropriate under the private and public interest factors. Given Savage's failure to respond, the Court finds that the factors tip towards transferring the case to the Texarkana Division.

I. **Public Interest Factors**

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity

of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen II*, 545 F.3d at 315. The Court will consider each factor in turn.

### A. The Administrative Difficulties Flowing from Court Congestion

The first public interest factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963). To the extent this factor is applicable, courts focus on "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (citation omitted); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.").

DISD argues that allowing the case to be tried in the Sherman Division would permit plaintiffs to engage in forum shopping, and that filing cases without any rational relationship to the Sherman Division could create congestion beyond its judicial resources (Dkt. #17 at p. 6). First, the Court points out that this argument does not examine the issues this factor is meant to address, and it provides no basis for concluding that the Texarkana Division would bring a speedier resolution to this case. *Cf. MasterObjects, Inc. v. Facebook, Inc.*, No. 6-20-CV-00087-ADA, 2021 WL 7449852, at *5 (W.D. Tex. July 13, 2021) (comparing docket sizes of different districts and speed of moving case to trial). Second, DISD's argument is based on a strained reading of *Rock Bit International, Inc. v. Smith International, Inc.*, where the court noted that plaintiffs should not be allowed to forum shop simply because they may prefer to litigate in a forum with a speedier docket. 957 F. Supp. 843, 844 (E.D. Tex. 1997). Savage is a resident of Lamar County (Dkt. #1 at pp. 1–2), which is in the Sherman Division, so it does not appear that he is merely picking a favorable forum with no connection to his case. As such, *Rock Bit International* is truly irrelevant

5

to this factor. 957 F. Supp. at 843–44 ("Plaintiff resists [the motion to transfer venue] on the sole ground that civil actions in the Eastern District are disposed of faster than in the Southern District of Texas . . . ."). Therefore, since the Court is "unaware of any administrative difficulties that would arise from transferring or retaining the case," the Court finds that this factor is neutral. *In re Radmax, Ltd.,* 720 F.3d 289 (5th Cir. 2013).

### B. The Local Interest in Having Localized Interests Decided at Home

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315. "Important considerations include the location of the injury, witnesses, and the [p]laintiff's residence." *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022) (citations omitted). This factor recognizes that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

Here, the Sherman Division has some local interest in this case because Savage is a resident in the Sherman Division. That said, the Fifth Circuit has noted that a plaintiff's choice of venue is given less deference for intra-district transfers. *In re Radmax*, 720 F.3d at 289. Meanwhile, DISD has stated—and Savage has not contested—that several other facts support a transfer on this factor. DISD is located in the Texarkana Division, and according to DISD, the events giving rise to this case occurred in the Texarkana Division. Furthermore, DISD claims that the key witnesses and non-party witnesses for this case are located in the Texarkana Division as well. As a result, the Court finds this factor weighs in favor of transfer. *See Elderkin v. Flour Bluff ISD*, No. CIV. A. 06:08-CV-64, 2008 WL 5101561, at *4 (S.D. Tex. Nov. 26, 2008) (finding factor weighed in favor of transfer because local school district was within different division and events giving rise to the litigation occurred there).

### C. Familiarity of the Forum with Governing Law

DISD has not attempted to analyze the third public interest factor, and the Court finds that it is neutral. Neither forum has a greater familiarity with the governing law in this action.

### D. Avoidance of Conflict of Laws

The final public interest factor "seeks to avoid 'unnecessary problems of conflict of laws or in the application of foreign law.'" *Def. Distributed*, 30 F.4th at 436 (quoting *Volkswagen II*, 545 F.3d at 315). Once more, this factor is neutral. A transfer to the Texarkana Division would not resolve any problems with the application of foreign law or avoid an issue with conflict of laws.

## II. Private Interest Factors

Next, the Court considers the private interest factors. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen II*, 545 F.3d at 315.

### A. The Relative Ease of Access to Sources of Proof

When examining the relative ease of access to sources of proof, the Court looks to see where potential evidence is located. *Id.* at 316. For this factor, the party seeking transfer "has the burden to establish good cause, which requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum." *Def. Distributed*, 30 F.4th at 434 (citation omitted). Under normal circumstances, DISD would not come close to demonstrating that a transfer is warranted under this factor. But, because the Court is assuming that DISD's factual allegations are true, the Court finds this factor favors transfer.

DISD alleges that "all of the documents and physical evidence" are in the Texarkana Division without specifically detailing what that evidence is (Dkt. #17 at p. 6). This ordinarily

would not suffice for a motion to transfer in this Court, or any other for that matter. *See Def. Distributed*, 30 F.4th at 434 ("[T]he district court erred by uncritically accepting the NJAG's conclusory assertions that 'the sources of proof relevant to these issues . . . are all in New Jersey.'"). Accepting this factual allegation as true, however, this factor weighs in favor of transfer here.

### B. The Availability of Compulsory Process

The second private interest factor considers the availability of compulsory process to secure the attendance of witnesses. This factor is neutral. DISD does not address this factor, and there is no witness identified by DISD who would be subject to compulsory process in the Texarkana Division, but not in the Sherman Division (Dkt. #17).

### C. Cost of Attendance for Willing Witnesses

"The third private factor, which considers the conveniences for witnesses who attend willingly, has been described as the most important factor." *Seagen Inc. v. Daiichi Sankyo Co., Ltd.*, 546 F. Supp. 3d 515, 531 (E.D. Tex. 2021) (citations omitted). As mentioned previously, DISD alleges that most of the key witnesses in this case are located in the Texarkana Division. Again, Savage has not disputed this assertion or provided any argument to the contrary. Therefore, the Court finds this factor weighs in favor of transfer.

### D. Other Practical Problems

Lastly, the Court considers any practical problems that make trial of a case easy, expeditious, and inexpensive, which include problems rationally related to judicial economy. *Seagen*, 546 F. Supp. 3d at 532. In that vein, DISD contends that there would be no delay in the parties' litigation if this transfer was granted (Dkt. #17 at p. 6). Previously, the Court has found that this argument does not support an intra-district motion to transfer. *Eltayeb*, 2020 WL 6781549, at *4 ("Defendant also urges that 'any delay from the transfer will be garden variety, and at this

early stage is not prejudicial' . . . While courts do look to whether any prejudice will result from the transfer, this consideration weighs no more in favor of transfer than against it."). However, courts have allowed an intra-district transfer on the grounds that the case was still in the early onset of litigation. *Barton v. Young,* 144 F. Supp. 2d 689 (E.D. Tex. 2001); *Coutinho & Ferrostaal, Inc. v. Brownsville & Rio Grande Int'l R.R.*, No. CV H-12-2829, 2013 WL 12188581, at *2 (S.D. Tex. Mar. 11, 2013) ("The fact that the parties will suffer no delay from the intradistrict transfer weighs slightly in favor of transfer."). At most, this consideration slightly weighs in favor of transfer. Since Savage has not responded to the current motion, the Court will accept that this factor slightly weighs in favor of transfer here.

### III. Summary

Normally, the Court would not grant a transfer based on the arguments or evidence (namely, the lack thereof) that DISD presents. However, Savage's failure to controvert any of the factual allegations made in DISD's motion changes the outcome of the pending motion. After analyzing the relevant factors, the Court finds that four factors weigh in favor of transfer, while four factors are neutral. With four factors favoring transfer, and emphasizing Savage's lack of response, the Court will exercise its discretion and transfer this case to the Texarkana Division.

### CONCLUSION

It is therefore **ORDERED** that Defendant Detroit Independent School District's Motion to Transfer Venue (Dkt. #17) is hereby **GRANTED**.

It is further **ORDERED** that this case is **TRANSFERRED** to the Texarkana Division of the Eastern District of Texas.

**IT IS SO ORDERED.**

**SIGNED this 13th day of June, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE